UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELSIE M. STOWELL,

                Plaintiff,

vs.                         Case No. 2:04-cv-443-FtM-33DNF

UNITED STATES OF AMERICA and
PETER LAUTENBACH, D.O.,

                Defendants.
_____

**ORDER**

    This matter comes before the Court on Defendant Peter Lautenbach, D.O.'s Motion to Dismiss the Amended Complaint (Doc. # 33), filed June 20, 2005. On June 23, 2005, Plaintiff Elsie M. Stowell filed a memorandum in opposition to the motion to dismiss (Doc. # 34). Upon review of the motion to dismiss and the memorandum in opposition, the Court grants the Defendant's motion.

**I. STANDARD OF REVIEW**

    In deciding a motion to dismiss, the Court "accept[s] the facts of the complaint as true and view[s] them in the light most favorable to the non-moving party." See Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004)(citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set

of facts in support of his claim which would entitle it to relief." 75 Acres, LLC v. Miami-Dade County, Fla., 338 F.3d 1288, 1293 (11th Cir. 2003)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The plaintiff is not required by the Federal Rules of Civil Procedure to "set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47. All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must be sufficient to afford the defendant "fair notice of what the claim is and the grounds upon which it rests." United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003)(quoting Conley, 355 U.S. at 47).

## II.  FACTS

Plaintiff Elsie Stowell is the widow of James Stowell. (Doc. # 31, ¶ 6). She brings this action because her deceased husband allegedly received negligent care from Dr. Lautenbach, who is a private health care practitioner in Ft. Myers, as well as various health care providers employed at the VA Outpatient Clinic in Ft. Myers, Florida. (Doc. # 31, ¶¶ 6-11).

Between 1993 and 2002, Mr. Stowell received primary medical care services at the VA clinic. (Doc. # 31, ¶ 10). Among the treatments he received was a proctoscopic exam in August 1993, which was administered in response to Mr. Stowell's complaints that he suffered from hemorrhoids. (Doc. # 31, ¶ 10). Between 1993 and

2002, the only colorectal cancer screening Mr. Stowell underwent was the distribution of fecal occult blood (FOB X 3) testing kits in 1997, 1999, and 2001. (Doc. # 31, ¶ 10).

Dr. Lautenbach began treating Mr. Stowell in July 1998 because his office was substantially closer to Mr. Stowell's home than the VA Clinic in Ft. Myers. (Doc. # 31, ¶ 11). Lautenbach treated Mr. Stowell approximately twenty-five times between 1998 and 2002, twice performing rectal exams. (Doc. # 31, ¶ 11). Each rectal exam yielded negative results when the specimen was tested for blood. (Doc. # 31, ¶ 11).

In August 2002, Mr. Stowell went to the VA Clinic, complaining of abdominal pain, rectal bleeding, and constipation. (Doc. # 31, ¶ 12). In October 2002, he underwent a colonoscopy, performed by a private physician, which revealed that he had a rectosigmoid mass from 13 to 18 centimeters from the anal verge. (Doc. # 31, ¶ 12). The mass was biopsied, pathology confirmed the presence of adenocarcinoma, and subsequent radiological studies found that Mr. Stowell had stage IV rectal cancer. (Doc. # 31, ¶ 12).

Mr. Stowell passed away on December 6, 2004. (Doc. # 31, ¶ 15). Mrs. Stowell brought the instant suit, alleging that Lautenbach and the VA health care providers failed to provide or recommend flexible sigmoidoscopy or colonoscopy to her husband, which may have prevented or allowed the early detection of his colon cancer. (Doc. # 31, ¶ 13). Mrs. Stowell also claims that

3

the VA failed to obtain laboratory reports on the three FOB X 3 tests that were performed on Mr. Stowell at the facility. (Doc. # 31, ¶ 13). Mrs. Stowell further claims that Lautenbach should have obtained or recommended annual fecal occult blood testing to her husband during the four year period when he treated him. (Doc. # 31, ¶ 14). Mrs. Stowell claims that because Lautenbach and the VA Clinic failed to provide her husband with appropriate colorectal cancer screening, there was a delay in diagnosing his cancer that allowed it to grow, metastasize, and become incurable, eventually leading to his death. (Doc. # 31, ¶ 15).

### III. ANALYSIS

Lautenbach's Motion contains two grounds for dismissal. His first argument is that the Amended Complaint fails to state a cause of action because it does not allege compliance with the medical malpractice screening provisions of Chapter 766, Florida Statutes (2004). His second argument is that the district court lacks supplemental jurisdiction. Because the Court agrees with Lautenbach's first argument for dismissal and grants his motion to dismiss on that basis, it is unnecessary to address his supplemental jurisdiction argument.

#### A. **FAILURE TO STATE A CAUSE OF ACTION**

Lautenbach's first argument is that the Amended Complaint fails to state a cause of action because it does not allege compliance with the medical malpractice screening provisions set

4

forth in Section 766 of the Florida Statutes.  He points to a case, styled <u>Clark v. Sarasota County Public Hospital Board</u>, 65 F. Supp. 2d 1308 (M.D. Fla. 1998), from this district that held that "[i]f a court finds that a claimant has not complied with presuit procedures prior to filing his complaint, § 766.206(2), Florida Statutes directs the court to dismiss the action." <u>Id.</u> at 1310. Mrs. Stowell, on the other hand, argues that this Court should follow a different case, also decided by a court in this district, wherein the court denied a motion to dismiss that alleged as its grounds non-compliance with Florida's pre-suit investigation procedures.  <u>See</u> <u>Thompson v. Kindred Nursing Ctrs. E., L.L.C.</u>, 211 F. Supp. 2d 1345 (M.D. Fla. 2002).

In a federal diversity case, the general rule is that a district court must apply the substantive law of the forum state, but should apply federal procedural law.  <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64 (1938).  Whether a law is substantive or procedural can pose a difficult issue.  <u>See</u> <u>Gasperini v. Ctr. for Humanities</u>, 518 U.S. 415, 427 (1996)("Classification of a law as 'substantive' or 'procedural' for <u>Erie</u> purposes is sometimes a challenging endeavor.").  As neither the Eleventh Circuit nor the Florida Supreme Court have precisely addressed the issue of whether a federal court should require medical malpractice plaintiffs to follow Florida's pre-suit investigation procedures as outlined in section 766, Florida Statutes, there is no precedent that directly

5

controls this Court's determination. There are, however, two cases that this Court finds highly persuasive.

In <u>Williams v. Campagnulo</u>, 588 So. 2d 982 (Fla. 1991), the Florida Supreme Court considered whether a medical malpractice complaint timely brought under section 768.57, Florida Statutes, is maintainable even though no notice was filed within the limitation period required by the statute. <u>Id.</u> The Florida court noted that it had previously clarified that "compliance with the prefiling notice requirement of section 768.57 was a condition precedent to maintaining an action for malpractice." <u>Id.</u> at 983. The court also said it was "evident that the legislature intended to distinguish the furnishing of a prefiling notice from the filing of a complaint." <u>Id.</u> Significantly, the Florida court rejected the contention that the notice requirement of section 768.57 was procedural, stating that "[t]he statute was intended to address a legitimate legislative policy decision relating to medical malpractice and established a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." <u>Id.</u> The court ultimately concluded that the statute was "primarily substantive." <u>Id.</u>

Section 768.57, Florida Statutes, and section 766.106, Florida Statutes, are one and the same. <u>See Rhoades v. Southwest Florida Reg'l Med. Ctr.</u>, 554 So. 2d 1188, 1189, n.1 (Fla. 2nd DCA

6

1989)(noting that section 768.57, Florida Statutes, was transferred to section 766.106, Florida Statutes). Section 766.106 sets forth presuit procedures for medical malpractice cases in Florida. The Florida court construed section 768.57 and determined that the statute was primarily substantive; therefore, it would appear that the Florida court would also hold that the new section, transferred from section 768.57 to section 766.106, is primarily substantive. The Florida court stated unequivocally that the intent behind the statute was to establish a process that encouraged settlement in medical malpractice proceedings at an early stage. See Williams, 588 So. 2d at 983.

As stated supra, in an Erie analysis, while a district court follows federal procedural law, it must follow the substantive law of the forum state. Erie, 304 U.S. at 78. The Florida Supreme Court's determination that Florida's presuit requirements for medical malpractice cases are primarily substantive deserves great weight in this analysis.

Our analysis need not end with Williams. According to Woods v. Holy Cross Hospital, 591 F.2d 1164 (5th Cir. 1979), a Florida medical malpractice statute requiring plaintiffs to mediate before litigating should be applied by a federal court sitting in diversity. Id. at 1168. The effect of the Fifth Circuit's ruling in Woods was to require federal district courts sitting in diversity to admit a mediation panel's findings into evidence in a

medical malpractice case. Id. at 1169, n.6. If the district court did not apply the Florida medical malpractice presuit procedures, then "Florida's medical malpractice statutory scheme will be inequitably administered. Non-resident plaintiffs will have a substantial advantage over the resident ones, as non-resident suitors may avoid the mediation panel provision simply by bringing their actions in federal court; consequently, the worst form of forum-shopping will be encouraged." Id. The Fifth Circuit also noted that the presuit procedures help "reduc[e] the cost of medical malpractice insurance and ultimately medical expenses." Id. "We would do a grave damage to the legislative response evidenced by Florida's Medical Malpractice Law," the court opined, "if we refused to apply the mediation requirement in diversity cases. We decline to take such a step." Id. at 1168-69.

This Court acknowledges that other courts in the district have come to different conclusions when analyzing this question. See, e.g., Braddock v. Orlando Reg'l Health Care Sys., Inc., 881 F. Supp. 580, 581 (M.D. Fla. 1995)(holding that the medical malpractice presuit requirements were procedural, distinguishing Williams on the grounds that "the [Florida] Supreme Court has observed [that] . . . 'the line between "substance" and "procedure" shifts as the legal context changes.'"). The cases reaching a different conclusion are not binding on this Court; as such, this Court elects to follow the precedent set by the Florida Supreme

8

Court in Williams and the Fifth Circuit in Woods. In following these decisions, the Court's holding today is consistent with the twin aims of Erie, which are "discouragement of forum-shopping and avoidance of inequitable administration of the laws." Stewart Org. v. Ricoh Corp., 487 U.S. 22, 31 (1988)(citing Hanna v. Plumer, 380 U.S. 460, 468 (1965)). For the reasons detailed supra, Lautenbach's motion to dismiss is granted.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Dr. Peter Lautenbach's Motion to Dismiss (Doc. # 33) is **GRANTED**.

(2) The clerk is hereby directed to terminate all pending motions and deadlines as to Defendant Lautenbach.

**DONE** and **ORDERED** in Chambers in Fort Myers, Florida, this 26th day of October, 2005.

*(signature)*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record